Joel P. Kelly (SBN 100716)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 689-0404
Facsimile: (213) 689-0430
Joel.Kelly@jacksonlewis.com

Melissa D. Owens (SBN 327295)
JACKSON LEWIS P.C.
225 Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 573-4900
Facsimile: (619) 573-4901
Melissa.Owens@jacksonlewis.com

Attorneys for Defendant
OMNI HOTELS MANAGEMENT CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN AQUINO, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OMNI HOTELS MANAGEMENT CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:<br><br>Removed from Los Angeles Superior Court Case No. 22STCV14835<br><br>**CLASS ACTION**<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441, 1446, AND 1453**<br><br>*[Filed concurrently with Declarations of Melissa D. Owens and Philip McNicholas, and Exhibits; Civil Case Cover Sheet, Certification and Notice of Interested Parties; and Corporate Disclosure Statement: and Suggestion of Death]*<br><br>State Court Complaint filed: May 4, 2022<br>Trial Date: Not Assigned |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant OMNI HOTELS MANAGEMENT CORPORATION ("Omni" or "Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1367, 1441(a)-(b), 1446, and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Los Angeles.

1. Plaintiff CARMEN AQUINO ("Plaintiff") filed the Class Action Complaint in the Action entitled *Carmen Aquino v. Omni Hotels Management Corporation, et al*, Superior Court of the State of California for the County of Los Angeles, Case No. 22STCV14835 (Complaint). A true and correct copy of the Summons, Complaint, First Amended General Order, Order Pursuant to CCP 1054(a), ADR Information Package, and Civil Case Cover Sheet is filed herewith as **Exhibit A.**

2. Through the Complaint, Plaintiff alleges the following seven (7) causes of action under California law: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide rest periods; (4) failure to provide meal periods; (5) failure to pay all wages upon termination; (6) failure to provide accurate wage statements; and (7) unfair competition. [*See generally,* Complaint.]

3. Through the Complaint, Plaintiff seeks to represent five (5) classes: (1) "All current and former employees of Defendant[] within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as "Non-Exempt Employee Class"); (2) "All current and former employees of Defendant[] within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class, who worked shifts of 4 hours or more (collectively referred to as "Rest Period Class"); (3) "All current and former employees of Defendant[] within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's

complaint up until the time that notice of the class action is provided to the class, who worked shifts of 5 hours or more (collectively referred to as "Meal Period Class"); (4) "All former employees of Defendant[] within the State of California at any time commencing three (3) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class, who did not receive all their wages upon termination and or resignation of their employment (collectively referred to as "Late Pay Class"); and (5) "All current and former employees of Defendant[] within the State of California at any time commencing one (1) year preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class, who were provided with wage statements (collectively referred to as "Wage Statement Class"). *See* Complaint ¶ 20.]

4. Defendant was served with the Complaint and other related court documents in **Exhibit A** on May 18, 2022.

5. On June 16, 2022, Defendant filed its Answer to the Complaint in the Superior Court of California, County of Los Angeles. A true and correct copy of Defendant's Answer is filed herewith as **Exhibit B**.

6. Pursuant to 28 U.S.C. § 1446(a), **Exhibits A and B** comprise all process and pleadings filed, served, or otherwise received in this Action.

## TIMELINESS OF REMOVAL

7. This Notice of Removal has been filed within thirty (30) days after Defendant first received a copy of Plaintiff's Summons and Complaint upon which this Action is based. This Notice of Removal is therefore filed within the time period provided by 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (noting the 30-day removal period runs from the service of summons and complaint); *see also* Fed. R. Civ. Proc. 6(a)(1)(C), 6(a)(5) (extending time until next business day if deadline falls on a Saturday, Sunday, or legal holiday).

8. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting documents will be promptly

served on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be satisfied.

### JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

9. Pursuant to Section 4 of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

10. In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

11. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d). It is a civil action filed as a putative class action in which Plaintiff is a citizen of a state different from Defendant, the Complaint's allegations place more than $5,000,000 in controversy exclusive of interest and costs, and the putative class numbers more than 100 members. *See* 28 U.S.C. §§ 1332(d), 1453. Furthermore, Defendant is not a State, State official, or other governmental entity.

**CAFA's Diversity Requirement Is Satisfied**

12. CAFA's diversity requirement is satisfied, in relevant part, when at least one member of a class of plaintiffs is a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2); *see also Snyder v. Harris*, 394 U.S. 332, 340, 89 S. Ct. 1053, 1059 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant and have nothing to fear from trying the lawsuit in the courts of their own State."); *Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014) ("the citizenship of 'the entire

plaintiff class' has no bearing on the jurisdictional inquiry. Diversity jurisdiction in a class action depends solely on the citizenship of the named parties."); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 162 (2d Cir. 1987) ("It is hornbook law, based on 66 years of Supreme Court precedent, that complete diversity is required only between the named plaintiffs and the named defendants in a federal class action.").

13. Citizenship of the parties in this Action is determined by their citizenship status at the Action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

14. For diversity jurisdiction purposes, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *see also Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of their citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile). Furthermore, a person's intention to remain may be established by their place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.,* 2017 U.S.Dist.LEXIS 90131, at *10 (C.D.Cal. June 12, 2017). ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

15. Plaintiff alleges that she "is a resident of the State of California." [Complaint ¶ 10.] Furthermore, Plaintiff alleges she "has been employed by Defendant[] as a non-exempt employee in California." [Complaint ¶ 10.]

16. Upon information and belief, Plaintiff was at all relevant times until her death on our about June 7, 2022, a citizen of the State of California.

17. Accordingly, by her own allegations, Plaintiff is a citizen of the State of California within the meaning of 28 U.S.C. § 1332(a). *See e.g. Zavala v. Deutsche Bank Tr. Co. Ams.*, 2013 U.S. Dist. LEXIS 96719, at *9 (N.D. Cal. July 10, 2013) ("A party's residence is 'prima facie' evidence of domicile. In the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes.") (internal citations omitted); *see Doolin v. American Optical*, 2016 U.S. Dist. Lexis 83733 (MD Fla. 2016) (the citizenship of an estate is determined by that of the decedent, not that of the personal representative).

18. A corporation is a citizen of any state in which it is incorporated and of the state in which it has its principal place of business. 28 U.S.C. § 1332(c).

19. Plaintiff correctly alleges that Defendant is a Delaware corporation. [Complaint, ¶ 11.] Defendant maintains its headquarters in Dallas, Texas. [Declaration of Phil McNicholas, ¶¶ 2-4.] Accordingly, Defendant, both at the time this action was commenced and at the time it was removed to federal court, is a citizen of the State of Delaware and the State of Texas within the meaning of Section 1332(c)(1), because it has been at all such times a corporation formed under the laws of the State of Delaware, with its principal place of business and corporate headquarters located in Dallas, Texas. *See Hertz Corp. v. Friend*, 599 U.S. 77, 130 S.Ct. 1181, 1192 (2010) (holding that a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters--provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."). Applying the "nerve center" test, Dallas, Texas, as Defendant's headquarters, is the state where Defendant's primary executive, administrative, financial and management functions are conducted and where the high-level officers direct, control, and coordinate the corporation's activities — *i.e.*, the principal place of business of Defendant.

20. Because at least one member of the class and Plaintiff are citizens of a state (*i.e.* California) different from Defendant (*i.e.* Delaware or Texas), minimal diversity exists here. *See Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

21. The presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

**CAFA'S Amount In Controversy Requirement is Satisfied**

22. CAFA, 28 U.S.C. Section 1332(d), authorizes the removal of class action cases in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000.

23. Where a plaintiff's complaint is silent as to whether the amount in controversy is less than CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81, 89 (2014). A "statement 'short and plain' need not contain evidentiary submissions." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (quoting *Dart*, 574 U.S. at 84); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("a removing defendant's removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"). "Evidence establishing the amount is required by §1446(c)(2)(B) ***only*** when the plaintiff contests, or the court questions, the defendant's allegation." *Dart*, 574 U.S. at 89 (emphasis added).

24. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal.

2002); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated"). The argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 n.1 (9th Cir. 2002) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)). Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).

25. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the amount in controversy requirement under CAFA should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . . .").

26. During the Class Period, Defendant has employed over 5,000 nonexempt employees in California. Over 3,000 of those nonexempt employees are former

1  employees. Given that Plaintiff alleges that, for "at least four (4) years prior to the filing
2  of this action and through the present," Defendant maintained "a policy and practice of
3  failing to pay wages," provide "rest periods," and provide "meal period[s]," [Complaint,
4  ¶¶ 2-4], all 5,000 employees in California are putative class members.

5      27.   Where a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought."); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

28.    Without admitting that Plaintiff could recover or is entitled to any damages individually, let alone on a class wide basis, Defendant has a good-faith belief that Plaintiff's sought-after relief places the amount in controversy in this action exceeds $5,000,000, exclusive of interest and costs.

29.    The Complaint herein seeks relief in part on behalf of "[a]ll current and former employees of Defendant[] within the State of California at any time commencing

four (4) years preceding the filing of Plaintiff's complaint up until the time that the notice of the class action is provided to the class" who allegedly suffered meal period, rest break, minimum wage, and overtime violations at any time during the Class Period. [*See* Complaint, ¶ 20.]

30. Plaintiff alleges that "Plaintiff and other similarly situated employees have not been paid wages, including overtime wages, for all time worked on multiple occasions, as a result of Defendant[] requiring employees to work off-the-clock, such as submitting to required COVID-19 temperature checks prior to clocking-in and donning and doffing required work uniforms prior to and after clocking-in and out." [Complaint, ¶ 14.]

31. Plaintiff also alleges that "Defendant[] [has] had a consistent policy of failing to provide Plaintiff and other similarly situated employees or former employees within the State of California rest periods of at least ten (10) minutes per four (4) hours worked or major fraction thereof and failing to provide compensation for such unprovided rest periods as required by California wage and hour laws." [Complaint, ¶ 15.]

32. Plaintiff further alleges that "Defendant[] [has] had a pattern and practice of on multiple occasions failing to provide Plaintiff and other similarly situated employees within the State of California a thirty (30) minute uninterrupted meal period for days on which the employees worked more than five (5) hours in a workday and a second thirty (30) minute uninterrupted meal period[] for days on which the employees worked in excess of ten (10) hours in a work day, and on multiple occasions failing to provide compensation for such unprovided meal periods." [Complaint, ¶ 16.]

33. Plaintiff also alleges "Defendant[] [has] failed to comply with Labor Code § 226(a) by, on multiple occasions, not providing itemized wage statements accurately showing, including but not limited to, total hours worked during the pay period and pay due and owing for failure to pay wages as described herein." [Complaint, ¶ 18.]

34. Plaintiff also alleges "[a]t the time Plaintiff's employment and the employment of other former employees of Defendant[] ended, Defendant[] willfully failed to pay overtime wages, minimum wages, and rest and meal period premiums in lieu of each unprovided rest and meal period." [Complaint, ¶ 19.] Accordingly, Plaintiff alleges "Plaintiff and other members of the Late Pay Class are entitled to penalty wages from the date their earned and unpaid wages were due upon termination until fully paid, up to a maximum of 30 days." [Complaint, ¶ 61.] Labor Code section 203 provides that "[i]f an employer willfully fails to pay…any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid…but the wages shall not continue for more than 30 days." The statute of limitations on a Section 203 claim is three years. *See* Lab. Code § 203(b); Cal. Code Civ. Proc. § 338(a); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1394-1401 (2010).

35. At all times during the Class Period, Defendant employed 26 or more employees. During the Class Period, approximately 3,000 nonexempt employees in California left their employment with Defendant. Currently, the minimum wage in California for employers with twenty-six (26) or more employees is $15.00 per hour. Labor Code section 203 provides that if an employee quits or is terminated from employment and does not receive all wages due at the time of separation, the employee can recover waiting time penalties for up to 30 days until the wages are paid. Therefore, potential waiting time penalties are up to approximately $10,800,000.00 (3,000 putative class members x $15.00 per hour x 8 hours per day x 30 days). *See Lucas v. Michael Kors (USA) Inc.,* 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal."). This alone satisfies CAFA's amount in controversy requirement.

36. Additionally, Plaintiff pleads in the Complaint that "Defendant[] failed to provide Plaintiff and the other members of the Wage Statement Class accurate itemized wage statements in accordance with Labor Code § 226(a)." [Complaint, ¶ 68.]

37. Labor Code section 226(e)(1) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [section 226] subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Plaintiff's § 226(a) claims are subject to a one-year statute of limitations. Cal. Code Civ. Proc. § 340(a). During the time period of May 4, 2021 through the present, Defendant has employed over 3,000 nonexempt employees in the State of California.

38. Thus, based on Plaintiff's requested relief, an assessment of total Labor Code section 226 penalties based on the statutory maximum could amount to over $12,000,000.00 ($4,000.00 x 3,000 employees).

39. Alternatively, a calculation of Plaintiff's claims for violations under Labor Code sections 203 and 226–for Defendant's alleged failure to pay all wages due at termination and alleged failure to provide accurate wage statements, respectively—can also reasonably be read to place in controversy an amount exceeding $22,800,000.00 (*i.e.* $10,800,000.00 + $12,000,000.00, respectively). As such, based on either calculation, the amount in controversy based on the allegations of the Complaint exceed $5,000,000. *See Behrazfar v. UNISYS Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (When a "[d]efendant's calculations were relatively conservative, made in good faith, and based on evidence wherever possible," the Court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.").

40. Additionally, Plaintiff's Complaint seeks unspecified attorneys' fees and costs in this action. [*See* Complaint, ¶¶ 34, 40, 46, 53, 64, 73, 78, Prayer ¶ O.] "[W]here

an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy. *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Indeed, "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also*, *Lucas v. Michael Kors (USA) Inc.*, 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

41.  "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also*, *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Herrera v. Carmax Auto Superstores Cal., LLC*, 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available.").

42.  Here, the projected damages of Plaintiff's claims of inaccurate wage statements and waiting time penalties may surpass $10,800,000.00, which itself exceeds

the jurisdictional requirement. Twenty-five percent of this amount is $2,700,000.00. In addition to these claims, Plaintiff has also asserted claims for failure to pay wages and overtime, failure to provide meal periods, failure to provide rest breaks. *See generally* Complaint. Therefore, the minimum amount in controversy is easily satisfied.

**CAFA's Numerosity Requirement Is Satisfied**

43. CAFA also requires that "the number of members of all proposed plaintiff classes in the aggregate" exceeds 100, a standard satisfied by the Complaint here. *See* 28 U.S.C. § 1332(d)(5).

44. Plaintiff alleges she "is informed and believes that there are over 100 Class Members employed by Defendant[s] within the State of California." [Complaint, ¶ 23.] Defendant has employed over 5,000 nonexempt employees alone during the Class Period. As such, this Court properly has jurisdiction over this matter, as the class proposed by Plaintiff contains in excess of 100 members.

## VENUE IS PROPER

47. Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441(a) and 1391(c) because the State action was filed in this district and Defendant is subject to personal jurisdiction in the Northern District of California.

48. WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Los Angeles to this Court.

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | DATED:  June 17, 2022 | JACKSON LEWIS P.C. |
| 4 | | By: *s/ Joel P. Kelly* |
| 5 | | Joel P. Kelly<br>Joel.Kelly@jacksonlewis.com |
| 6 | | Melissa D. Owens<br>Melissa.Owens@jacksonlewis.com |
| 7 | | Attorneys for Defendant<br>OMNI HOTELS MANAGEMENT CORPORATION |

4870-3438-2115, v. 2